BROTHER TIMOTHY'S, INC., Plaintiff-Appellee, *v.* ILLINOIS LICENSE APPEAL COMMISSION *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 78-692

Opinion filed February 28, 1979.

William R. Quinlan, Corporation Counsel, of Chicago (Mary Cahill, Daniel Pascale, and Henry Phillip Gruss, Assistant Corporation Counsel, of counsel), for appellants.

Katie Newsham, Philip J. Rock, and Thomas J. Heneghan, all of Rock, Fusco & Heneghan, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

On October 6, 1975, the retail liquor license of plaintiff, Brother Timothy's, Inc., was revoked by the local liquor control commissioner of the city of Chicago based upon a finding that the manager of the licensed premises had murdered a patron. The license appeal commission affirmed the order of revocation. Thereafter plaintiff sought administrative review and, on January 17, 1978, the trial court reversed the decision of the commission. Defendants appeal. The pertinent facts are as follows.

On December 13, 1974, Richard Carlisle was manager and bartender at the licensed premises. Susan Cerf was a patron and Carlisle served her several drinks. At 1:30 a.m. all the customers except Cerf had departed whereupon Carlisle locked the doors, closed the bar, and continued drinking with Cerf. Carlisle then choked Cerf, partially disrobed her, and stabbed her to death.

Officer Edward Adorjan of the Chicago Police Department was present during the interrogation of Carlisle. Carlisle gave a statement to the police in which he admitted murdering Cerf.

Demi Stecca, president of defendant corporation, testified that before hiring Carlisle he made an extensive investigation into his background and talked to former employers. Stecca also gave Carlisle an individual evaluation analysis exam which indicated that Carlisle was emotionally and psychologically suited to run a business. Several customers of the licensed premises, including Carlisle's wife, testified that they had never noticed anything unusual about Carlisle's behavior.

In reversing the commission's decision, the trial judge stated that his finding was based on the fact that Carlisle's act was not the activity of the employer or licensee.

■■ The local liquor control commissioner may suspend or revoke a liquor license for cause, and the violation of any law, ordinance, or applicable regulation generally constitutes cause. (Ill. Rev. Stat. 1977, ch. 43, pars. 112 and 149.) The business of selling liquor is attended with danger to the community, and the public must be protected from that danger by the State. The legislature, recognizing that a licensee may conduct his business through agents and employees, enacted the following section of the Liquor Control Act to ensure the licensee's accountability for violations of the Act:

> "Every act or omission of whatsoever nature constituting a violation of any of the provisions of this Act, by any officer, director, manager or other agent or employee of any licensee, shall be deemed and held to be the act of such employer or licensee, and said employer or licensee shall be punishable in the same manner as if said act or omission had been done or omitted by him personally." (Ill. Rev. Stat. 1977, ch. 43, par. 185.)

Defendants' position, with which we agree, is that the manager's crime should be deemed to be the licensee's act according to the operation of the statute. We believe the facts and circumstances of the present case are analogous to those in *Daley v. Richardson* (1968), 103 Ill. App. 2d 383, 243 N.E.2d 685. There, the bartender shot a patron who was involved in a barroom brawl. This court held that a licensee is strictly accountable for all violations committed by agents or employees on the licensed premises,

and we upheld the action of the local liquor control commission in revoking the defendant's liquor license.

In the present case, the manager of plaintiff's lounge murdered a patron on the licensed premises. Prior to killing the patron, the manager, who was also the bartender, had served her several drinks. The illegal act was committed within the course of the agent's employment. The mere fact that the manager had locked the doors and had closed the bar when the other customers departed the premises did not alter the victim's status as a patron. Indeed, Carlisle continued to serve her drinks. The findings of the local liquor control commissioner in the present case were supported by substantial evidence and were not against the manifest weight of the evidence. We believe the trial court erred in reversing the order of revocation.

At the time the trial judge reversed the revocation order, he stated he was relying on *Nappi v. License Appeal Com.* (1977), 50 Ill. App. 3d 329, 365 N.E.2d 612. That decision is clearly distinguishable from the present case. In *Nappi*, a barmaid shot her husband on the licensed premises. The victim here was a customer and, as we have noted, had been served several drinks by plaintiff's agent prior to the killing.

For the reasons stated, the judgment of the circuit court of Cook County reversing the order of the license appeal commission is reversed.

Judgment reversed.

McGILLICUDDY and RIZZI, JJ., concur.