JANE M. BYRNE, Mayor and Local Liquor Control Commissioner of the City of Chicago, Plaintiff-Appellant, v. MORGAN M. STERN et al., Defendants-Appellees.

First District (1st Division)    No. 80-2562

Opinion filed December 21, 1981.—Rehearing denied February 11, 1982.

---

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and Jetta N. Jones, Assistant Corporation Counsel, of counsel), for appellant.

Sydney Marovitz, of Marovitz, Powell, Pizer & Edelstein, of Chicago (David A. Novoselsky, of counsel), for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, the Local Liquor Control Commissioner of the City of Chicago, appeals from an order of the circuit court affirming the License Appeal Commission's reversal of plaintiff's revocation of defendant Morgan M. Stern's liquor license. On appeal, plaintiff presents the following issues for review: (1) whether plaintiff's order of revocation is supported by the manifest weight of the evidence; (2) whether the dancer who made the proposal to perform an act of prostitution was an employee of de-

fendant's lounge, rather than an independent contractor; and (3) whether the licensee has absolute liability for the acts of his agents and employees.

Plaintiff filed an administrative complaint on November 9, 1977, seeking the revocation of defendant's liquor license. The charge against defendant alleged:

> "That on October 20, 1977, the licensee, by and through his agent, Dan BADENHOP, bartender, knowingly permitted a violation of the laws of the State of Illinois and/or the Municipal Code of Chicago and/or the Rules and Regulations of the Illinois Liquor Control Commission, to be committed on the licensed premises, to wit: Solicitation for prostitution in violation of Chapter 38, Sec. 11—17(a)(1), Ill. Rev. Stat., 1975."

On February 15, 1978, plaintiff filed a second charge against defendant. The second charge alleged:

> "That on October 20, 1977, the licensee, by and through his agent, NEDA SPASIC, employee, knowingly offered or agreed to perform an act of prostitution for money with B. RIORDAN, a patron, said offer or agreement being made on the licensed premises, contrary to Chapter 38, §11—14(a), Ill. Rev. Stat. 1975."

A hearing was held at which Officer Bernard Riordan, Daniel Badenhop and the licensee testified. Officer Riordan testified that on October 20, 1977, he was at the licensed premises in plain clothes. Riordan stated that he had observed Neda Spasic dancing on the lounge's stage. According to Riordan, Spasic sat next to him at the bar after she had finished dancing. After a few minutes of conversation, Riordan stated that Spasic offered to engage in intercourse with him for $50, which offer was accepted by him. He testified that Dan Badenhop, the bartender, came over to where Riordan was sitting. Riordan asked, "Is this girl all right, is she okay?" According to Riordan, Badenhop stated, "Don't worry about her, she's okay." Riordan stated that he then went outside the lounge to get his partner. The two officers arrested Ms. Spasic and Badenhop. The City rested its case against defendant.

Daniel Badenhop testified that Neda Spasic was employed on the evening in question. Badenhop stated that he had a conversation with Riordan during which Riordan stated that he was looking for a little action and was out for a good time. Badenhop responded that he did not know what Riordan wanted and that he was just a bartender. Riordan pursued the conversation and, according to Badenhop, stated that he was looking for female companionship. Badenhop replied, "I'm not a pimp, sir, I'm a bartender. I don't provide anyone with female companionship." Badenhop testified that after Ms. Spasic completed her dancing, Riordan called her over to where he was sitting and asked her if she wanted a drink. Badenhop stated that he reminded the dancer of the house rule which

prohibits the dancers from sitting with patrons at the bar. Riordan later asked Badenhop if Ms. Spasic was a good girl. Badenhop responded, "Yes, she is a good girl. She doesn't mess around." Badenhop testified that he then told Riordan that the lounge had a house rule which provided that any girl who sits with a customer is discharged. Badenhop stated that defendant Stern had informed him of this rule at the time he began working at the lounge. Badenhop testified that he again warned Ms. Spasic of the house rule when Riordan reentered the premises and sat next to the dancer. He also stated that he had no knowledge of the conversation between Riordan and Ms. Spasic.

Defendant Morgan Stern testified that he held the license for the premises for 14 years. Stern stated that he had complained to the police on numerous occasions about the influx of pimps and prostitutes near his business. According to Stern, he had informed the police that he would refund any monies which were spent in his establishment while the police were trying to rid the area of the prostitutes. Stern testified that he paid the dancers $30 per evening. He stated that he usually obtained the dancers through advertisements in a local newspaper, although he had used an agency in the past. Stern stated that he did not permit the dancers to solicit drinks or money for the jukebox from patrons. Stern also testified that the dancers are not permitted to consume any alcoholic beverages, nor are they permitted to fraternize with customers. He stated that he has never permitted any of his employees to solicit for prostitution. He testified that he had been a tavern owner for 33 years and that he never had been charged with solicitation or prostitution. Stern stated that he had used Ms. Spasic as a dancer periodically over the preceding four years. He testified that he neither saw nor heard from Ms. Spasic after the night of the arrests.

Subsequently, plaintiff determined that the charge involving Ms. Spasic had been proved and revoked defendant's liquor license. Plaintiff made no finding on the charge concerning Badenhop. Defendant appealed plaintiff's order of revocation to the License Appeal Commission. The License Appeal Commission found that the order of revocation was not supported by the findings and that the charge on which plaintiff based the revocation was not supported by substantial evidence in light of the whole record and reversed the decision of plaintiff. Plaintiff sought administrative review of the License Appeal Commission's ruling. The circuit court found that there was evidence to support the License Appeal Commission's ruling and affirmed the reversal of plaintiff's order of revocation. Plaintiff appeals.

■■ In order for the local liquor control commissioner to revoke a liquor license, it is fundamental that the power to revoke a license for cause only extends to those instances involving conduct or actions by the licensee or

conduct or actions of others over whom the licensee is deemed to have control or responsibility. (*Easy Life Club, Inc. v. License Appeal Com.* (1974), 18 Ill. App. 3d 879, 310 N.E.2d 705.) Conversely, a licensee cannot be held responsible for the conduct or actions of others over whom he has no control. (See *Beer & Brat, Inc. v. Liquor Control Com.* (1976), 44 Ill. App. 3d 713, 358 N.E.2d 736; *Easy Life Club, Inc. v. License Appeal Com.*) However, the Liquor Control Act imposes strict liability upon the licensee for all violations of the act by the licensee's agents and employees. (Ill. Rev. Stat. 1977, ch. 43, par. 185; see *Daley v. Richardson* (1968), 103 Ill. App. 2d 383, 243 N.E.2d 685.) In the instant case, there is an issue as to whether Neda Spasic was an employee or an independent contractor of the licensee. The performance of work by one party is *prima facie* evidence of employment and, in the absence of contrary evidence, supports a presumption that the person is a servant. (*Hansmar, Inc. v. Illinois Liquor Control Com.* (1979), 78 Ill. App. 3d 690, 397 N.E.2d 241; *S & F Corp. v. Bilandic* (1978), 62 Ill. App. 3d 193, 378 N.E.2d 1137.) There is no dispute in this case that Ms. Spasic performed work as a dancer for defendant. During the hearing, defendant did not present any evidence to rebut the presumption that Ms. Spasic was anything but an employee. From our review of the report of proceedings, it appears that the parties to the hearing viewed Ms. Spasic as an employee and not otherwise. Therefore, it was reasonable under the facts and circumstances of this case to consider the dancer as an employee for purposes of the proceedings.

In a proceeding pursuant to the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), the scope of judicial review is limited to whether the findings and orders of the administrative agency are against the manifest weight of the evidence and whether the local commissioner acted arbitrarily and without cause or in clear abuse of discretion. (See *Askew v. Daley* (1978), 62 Ill. App. 3d 370, 379 N.E.2d 75; *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 254 N.E.2d 814.) The scope of review by the License Appeal Commission is closely analogous to administrative review in the circuit court. (See *Daley v. Richardson* (1968), 103 Ill. App. 2d 383, 243 N.E.2d 685.) In addition, the findings of the local commissioner are presumed to be *prima facie* true and correct and may be disturbed only where they are against the manifest weight of the evidence and an opposite conclusion is clearly evident. See *Easy Life Club, Inc. v. License Appeal Com.* (1974), 18 Ill. App. 3d 879, 310 N.E.2d 705.

In *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885, an employment discharge case under the Administrative Review Act, the supreme court outlined a two-step analytical framework for review of those cases in the

courts. First, the court must determine whether the administrative agency's findings of fact are contrary to the manifest weight of the evidence and, second, it must determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist. In the instant case, it is appropriate to use a similar analysis to examine the decision of plaintiff.

■■ Our review of the record and arguments of the parties leads us to conclude that the findings of plaintiff are not against the manifest weight of the evidence as to the conduct of the dancer. There was sufficient evidence by way of the testimony of Officer Riordan to establish that Ms. Spasic offered or agreed to perform an act of prostitution for money with him. Although there was testimony that defendant did not permit his dancers to fraternize with the patrons, it is for the local commissioner, as trier of fact, to determine the credibility of witnesses, to weigh the evidence and the inferences to be drawn from the evidence. (See *Cabaret, Inc. v. Daley* (1978), 66 Ill. App. 3d 326, 384 N.E.2d 10.) Defendant argues that there was no evidence to establish that he had control over the conduct or actions of Ms. Spasic and, accordingly, could not be charged with her conduct. (See *Middleton v. License Appeal Com.* (1974), 20 Ill. App. 3d 534, 314 N.E.2d 596; *Easy Life Club, Inc. v. License Appeal Com.* (1974), 18 Ill. App. 3d 879, 310 N.E.2d 705.) Those cases cited by defendant for the foregoing proposition involve unlawful conduct by patrons or others and do not involve conduct by the agents or employees of the licensee. In the situation where a patron is involved in unlawful conduct on the licensee's premises, the law is clear that the licensee must be able to control the patron's action or conduct in order to be charged with the conduct of the patron. However, it is equally clear that the law imposes strict liability upon the licensee for the action or conduct of his agents or employees on the premises regardless of whether the licensee has exercised control over the conduct of his employees or agents. In the instant case, defendant is to be held accountable for the acts of his employee or agent Ms. Spasic.

■■ Although the finding of plaintiff that the dancer's proposal to Officer Riordan is supported by substantial evidence and not against the manifest weight of the evidence, we note that plaintiff made no finding with respect to the charge involving the bartender. The record establishes that defendant possessed a license for 14 years for the premises involved in the present case and a liquor license for a total of 33 years. In light of the foregoing and the absence in the record of evidence which would tend to show that defendant had prior personal knowledge of the attempted solicitation or that defendant previously had been charged with violations of any liquor control laws, the sanction of revocation imposed by plaintiff was an abuse of discretion. It follows that that portion of the trial court's

decision which affirmed the reversal by the License Appeal Commission of the findings of fact made by plaintiff relating to the charge of solicitation is reversed, and we affirm that portion of the trial court's order which affirmed the License Appeal Commission's reversal of the sanction imposed by plaintiff because the sanction was not supported by substantial evidence and was against the manifest weight of the evidence. Further, we remand this cause to the trial court for the entry of an order remanding this matter to plaintiff for the imposition of a sanction less than revocation.

Affirmed in part; reversed and remanded in part.

GOLDBERG and O'CONNOR, JJ., concur.